## TESTIMONY OF COMMON LAW WIFE AGAINST HUSBAND ON TRIAL FOR BIGAMY.

[Comon Pleas Court of Allen County.]

### THE STATE OF OHIO v. DAVID F. BATES.

Decided, November 3, 1906.

*Criminal Law—Husband on Trial for Bigamy—Testimony of Common Law Wife Incompetent—Testimony Establishing a Common Law Marriage.*

1. The common law rule forbidding a husband or wife from testifying against each other has not been modified in Ohio to the extent of permitting a first wife from testifying against her husband who has married another woman and is on trial for bigamy.
2. The refusal of the trial judge to permit the first wife to testify in such a trial, on the ground that her testimony is incompetent on account of her relationship to the defendant, will not be regarded as prejudicial to the defendant, where accompanied by an explicit statement by the court to the jury that no fact with reference to the first marriage is thereby determined by the court.
3. Where a man and woman agree together that they will take each other for husband and wife, by words in the present tense, and that they will thenceforth occupy the relation of husband and wife during their joint lives, and this agreement is followed by cohabitation as husband and wife, and the woman is introduced by the husband as his wife, and the man is subsequently married in the usual form to another woman, there is a sufficient predicate for a conviction of bigamy in this state.

MATHERS, J.

This is on a motion for a new trial. There are numerous grounds urged, none of which, in the judgment of this court, are, well taken and only two of which are important enough to call for comment. One ground is the alleged misconduct of the prosecutor in calling the alleged first wife of the defendant as a witness and his subsequent reference to the ruling of the court upon the defendant's objection as to her competency. The court sustained the objection and excluded the witness.

Some reference to this ruling of the court was made by the prosecutor in his argument to the jury, as sustaining the state's contention that the woman was the defendant's wife. The court, however, was explicit and particular in its instructions to the jury, at the time the statement was made, that the jury must not think or conclude that the court had determined any fact in the case, and particularly the relationship of the alleged first wife. The jury were instructed that that was one of the principal issues in the case, and that whether or not she was the defendant's wife was to be determined by them from the evidence regardless of anything the court might have ruled in this behalf. They were further instructed that the court had no authority to determine any fact in issue, but that that was a matter solely within the province of the jury and that they could not lawfully conclude, from any ruling the court had made, as to whether this woman was the defendant's wife or not. The court is now of the opinion that in the face of this instruction, which was given with great care and promptness, that the defendant was not prejudiced.

The main contention of the defendant on this motion, however, is that the evidence fails to show that there was any lawful or valid marriage between the defendant and the alleged first wife; that she and the defendant were merely living together in a state of fornication; that she was not his lawful wife; that, in short, as Section 7020, Revised Statutes, inhibits persons of the opposite sex from living together in a state of adultery or fornication, it was manifestly the intention of the Legislature to penalize any such cohabitation, unless a marriage, under a license, or after the publication of banns, was solemnized by a magistrate, clergyman or priest. In other words, that a common law marriage can not serve as a predicate for a conviction of bigamy in this state. This question was fully argued during the progress of the trial, and the court held that a common law marriage could be made the basis of a bigamy prosecution, reaching that conclusion not only upon reason, but upon the authority of several decisions in this state where, in several cases, such a marriage has been recognized, and particularly in

the criminal cases of *Carmichael* v. *The State*, 12 O. S., 553, and *Swartz* v. *The State*, 13 Circuit Court Reports. The Swartz case was a bigamy case. The accused had lived with a woman for a number of years and had had two children by her, whose legitimacy was not only recognized by their jointly naming one of the children for him, but in all the other ways that a man might recognize his children as legitimate. The defendant in that case, and the woman, held each other out to the world as husband and wife; were recognized as such in society and in the church which they attended. The defendant abandoned this woman and married another under the forms of the statute. He was convicted of bigamy and the circuit court held the conviction rightful.

In the case at bar, Bates and Miss Ginter lived together from December 17, 1904, until sometime in July, 1906. They occupied the same room in his mother's house part of the time. He introduced her to a number of people as his wife, and said to others that she was his wife; he took her to a furniture store where they looked at some furniture and ordered some for some rooms that they intended to occupy, and he introduced her to the dealer as his wife. From the language of a number of letters which he wrote to her, and which were in evidence, the conclusion might reasonably be drawn, not only that they occupied the marital relation toward one another, but that an agreement to live as husband and wife existed between them. Furthermore, she had a child by him which was delivered at the home of his mother, and he procured the services of a firm of physicians for the occasion, telling them at the time he desired them to attend his wife in confinement.

On September 23, 1906, after procuring a marriage license a few days before, he was married to a Miss Miller by a minister of the gospel. The jury were carefully and fully instructed that if they were satisfied beyond a reasonable doubt that the defendant and Miss Ginter agreed with each other that they would take each other for husband and wife, by words in the present tense, and would thenceforth occupy the relation of husband and wife during their joint lives, and this agreement

was followed by cohabitation as husband and wife, they might find the defendant was legally married. They were instructed that they must look at all the evidence which had been admitted for their consideration; at the conduct of the parties in respect to this alleged contract; to any statements or admissions which might have been shown to have been made by the defendant, and, in the light of this evidence, in view of the circumstances as disclosed by the evidence, they should exercise their independent judgment and determine whether or not this contract of marriage had been entered into. Presumably the jury were satisfied beyond a reasonable doubt that such a contract existed; and, there being no dispute as to the second marriage of the defendant, the jury found the defendant guilty.

This court believes it to be the law that if a man and a woman agree together, by words *in praesenti* to become husband and wife, they being competent to make such a contract, and this agreement is followed by cohabitation, that they are as effectually married as if a ceremony had been performed in the presence of witnesses, after a license had been obtained or banns published. And that if thereafter the parties cohabit as husband and wife and hold themselves out as such, and if the man admits he is married to the woman and treats her as his wife, and especially if he have a child by her, that every consideration of law and good morals would require that he should be punished for bigamy if he afterward marry another woman. The statutes prescribing the forms for obtaining a license or the publication of banns and the solemnization of the marriage contract, are simply a regulation of the natural right of a man and a woman to marry. The statutes do not create that right; neither do they prohibit what is called a common law marriage, and while the court does not mean to stamp its. approval upon clandestine and secret agreements, nor to say that common law marriages are to be encouraged, yet, until the Legislature expressly prohibits them, the court is of the opinion that they do serve as a predicate for a conviction of bigamy if one of the parties to such a marriage afterward marry another.

It was said by one of Ohio's most learned jurists, in a case which the Supreme Court of this state decided, that the common

law was a part of the law of Ohio, except where it was inconsistent with the genius of our institutions, or where it had been expressly or impliedly abrogated by statute or a decision of the court.

Counsel for the defendant relied upon the existence in this state of the common law when they objected to the testimony of the defendant's alleged first wife. The statute in this state, defining the competency of witnesses in some cases, provides that husband and wife may testify in behalf of each other in criminal trials. To that extent only is the common law rule of evidence modified in this state. The common law rule did not permit husband or wife to testify either for or against each other, the theory of the common law being that the personality of the wife was merged in that of the husband. This led to many injustices and the Legislature finally modified it to the extent indicated. But the modification did not abrogate the rule in so far as it prohibited the testimony of husband or wife against each other; and so the court excluded the testimony of the defendant's alleged first wife. This is cited merely as an illustration of the fact that the common law rules are still in force in this state where they have not been abrogated. The reasons for upholding a common law marriage in a prosecution for bigamy, are just as imperative and as well grounded in considerations of public policy, as for upholding any other kind of a marriage, and doubtless, if a man and woman had so conducted themselves as to come within the rule of a common law marriage, considerations of public policy would forbid their denying that relationship afterwards. I fail to perceive any good reason why, after such a marriage has been entered into, a prostitution of the marriage ceremony, which is involved in a second marriage while a common law wife is alive, is not just as much bigamy as if the first marriage had been solemnized by a magistrate, minister or priest. A bigamous marriage *ex vi termini* means one where one of the parties already has a husband or wife living; and where a man has, to all intents and purposes, married a woman and lived with her as his wife and introduced her as such and had a child by her, I think he is as fully married as if a ceremony had been performed.

The motion for a new trial will be overruled.

B. F. Welty, Prosecuting Attorney, for state.

A. D. Graham and Wm. Klinger, for defendant.